# UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF OREGON

### PORTLAND DIVISION

CHERYL A. FALCO,                     )
                                     )
            Plaintiff,               )        Case No. 3:11-cv-01065-SI
                                     )
        v.                           )        **OPINION AND ORDER**
                                     )
MICHAEL J. ASTRUE,                   )
Commissioner of Social Security,     )
                                     )
            Defendant.               )
_____)

Bruce W. Brewer, 419 5th Street, Oregon City, OR 97045. Attorney for Plaintiff.

S. Amanda Marshall, United States Attorney, and Adrian L. Brown, Assistant United States Attorney, United States Attorney's Office, District of Oregon, 1000 S.W. Third Avenue, Suite 600, Portland, OR 97204-2902; David Morado, Regional Chief Counsel, Region X, and Scott T. Morris, Special Assistant United States Attorney, Office of the General Counsel, Social Security Administration, 1301 Young Street, Suite A-702, Dallas, TX 75202. Attorneys for Defendant.

**SIMON, District Judge.**

Ms. Cheryl A. Falco seeks judicial review of the final decision of the Commissioner of the Social Security Administration ("Commissioner") denying her application for Disability Insurance Benefits and Supplemental Security Income. Because the Commissioner's decision was not supported by substantial evidence, the decision is reversed and this case is remanded for further proceedings pursuant to 42 U.S.C. § 405(g), sentence four.

## I.      BACKGROUND

**A.      The Application**

Ms. Falco protectively filed an application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") on April 10, 2009, alleging disability beginning on April 3, 2009. Tr. 55–56, 100–09. She alleges disability due to chronic pain, anxiety, depression, fibromyalgia, lumps in her breasts, high blood pressure, and fatigue. Tr. 127. The Commissioner denied her application initially and upon reconsideration; thereafter, she requested a hearing before an Administrative Law Judge ("ALJ"). Tr. 57–60, 62–65, 67–71, 74–75. After an administrative hearing, held on December 10, 2010, the ALJ found Ms. Falco to be not disabled. Tr. 7–23, 33–49. The Appeals Council denied Ms. Falco's request for review, making the ALJ's decision the final decision of the Commissioner. Tr. 1–4. Ms. Falco now seeks judicial review of that decision.

**B.      The Sequential Analysis**

A claimant is disabled if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A). "Social Security Regulations set out a five-step sequential process for

OPINION AND ORDER, Page 2

determining whether an applicant is disabled within the meaning of the Social Security Act."

*Keyser v. Comm'r Soc. Sec. Admin.,* 648 F.3d 721, 724 (9th Cir. 2011); *see also* 20 C.F.R.

§ 404.1520 (DIB); 20 C.F.R. § 416.920 (SSI); *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987).

Each step is potentially dispositive. 20 C.F.R. §§ 404.1520(a)(4); 416.920(a)(4). The five-step

sequential process asks the following series of questions:

1.    Is the claimant performing "substantial gainful activity?"  20 C.F.R.
      §§ 404.1520(a)(4)(i); 416.920(a)(4)(i). This activity is work involving
      significant mental or physical duties done or intended to be done for pay
      or profit.  20 C.F.R. §§ 404.1510; 416.910. If the claimant is performing
      such work, she is not disabled within the meaning of the Act. 20 C.F.R.
      §§ 404.1520(a)(4)(i); 416.920(a)(4)(i). If the claimant is not performing
      substantial gainful activity, the analysis proceeds to step two.

2.    Is the claimant's impairment "severe" under the Commissioner's
      regulations? 20 C.F.R. §§ 404.1520(a)(4)(ii); 416.920(a)(4)(ii). Unless
      expected to result in death, an impairment is "severe" if it significantly
      limits the claimant's physical or mental ability to do basic work activities.
      20 C.F.R. §§ 404.1521(a); 416.921(a). This impairment must have lasted
      or must be expected to last for a continuous period of at least 12 months.
      20 C.F.R. §§ 404.1509; 416.909. If the claimant does not have a severe
      impairment, the analysis ends. 20 C.F.R. §§ 404.1520(a)(4)(ii);
      416.920(a)(4)(ii). If the claimant has a severe impairment, the analysis
      proceeds to step three.

3.    Does the claimant's severe impairment "meet or equal" one or more of the
      impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so,
      then the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(iii);
      416.920(a)(4)(iii). If the impairment does not meet or equal one or more of
      the listed impairments, the analysis proceeds beyond step three. At that
      point, the ALJ must evaluate medical and other relevant evidence to assess
      and determine the claimant's "residual functional capacity" ("RFC"). This
      is an assessment of work-related activities that the claimant may still
      perform on a regular and continuing basis, despite any limitations imposed
      by his or her impairments. 20 C.F.R. §§ 404.1520(e); 416.920(e). After the
      ALJ determines the claimant's RFC, the analysis proceeds to step four.

4.    Can the claimant perform his or her "past relevant work" with this RFC
      assessment? If so, then the claimant is not disabled. 20 C.F.R.
      §§ 404.1520(a)(4)(iv); 416.920(a)(4)(iv). If the claimant cannot perform
      his or her past relevant work, the analysis proceeds to step five.

> 5.    Considering the claimant's RFC and age, education, and work experience, is the claimant able to make an adjustment to other work that exists in significant numbers in the national economy? If so, then the claimant is not disabled. §§ 404.1520(a)(4)(v); 416.920(a)(4)(v); 404.1560(c); 416.960(c). If the claimant cannot perform such work, he or she is disabled. *Id.*

*See also Bustamante v. Massanari,* 262 F.3d 949, 954 (9th Cir. 2001).

The claimant bears the burden of proof at steps one through four. *Id.* at 953; *see also Tackett v. Apfel,* 180 F.3d 1094, 1100 (9th Cir. 1999); *Yuckert,* 482 U.S. at 140-41. The Commissioner bears the burden of proof at step five. *Tackett,* 180 F.3d at 1100. At step five, the Commissioner must show that the claimant can perform other work that exists in significant numbers in the national economy, "taking into consideration the claimant's residual functional capacity, age, education, and work experience." *Id.*; *see also* 20 C.F.R. §§ 404.1566; 416.966 (describing "work which exists in the national economy"). If the Commissioner fails to meet this burden, the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v); 416.920(a)(4)(v). If, however, the Commissioner proves that the claimant is able to perform other work existing in significant numbers in the national economy, the claimant is not disabled. *Bustamante,* 262 F.3d at 953-54; *Tackett*, 180 F.3d at 1099.

## C.    The ALJ's Decision

The ALJ applied the sequential process in his December 23, 2010 decision. Tr. 7–23. At step one, the ALJ found that Ms. Falco met the insured status requirement through June 30, 2011 and has not engaged in substantial gainful activity since April 3, 2009, the alleged onset date. Tr. 12. At step two, the ALJ found that Ms. Falco's fibromyalgia, degenerative joint disease of the left hip, and left leg length discrepancy were severe impairments. *Id.* At step three, the ALJ

found that Ms. Falco did not have an impairment or combination of impairments that met or equaled one of the specific impairments listed in the regulations. Tr. 14.

The ALJ then determined that Ms. Falco has the RFC to perform less than a full range of light work with the following restrictions: she can only occasionally climb on ramps or stairs and stoop, kneel, crouch, or crawl, but she can frequently balance; she cannot climb ladders, ropes, or scaffolds; and she must avoid concentrated exposure to vibration. *Id.* Further, Ms. Falco was restricted from work involving complex reading and writing and from mathematics without the assistance of a calculator. *Id.* Further, the ALJ indicated that Ms. Falco would perform best with oral instructions and demonstrations. *Id.* In reaching this conclusion, the ALJ considered Ms. Falco's testimony, but found that it was not fully credible. Tr. 15. In addition, the ALJ examined the lay testimony of Mr. Dan McKinley and found that it was credible to the extent it reported his observations of Ms. Falco and was not based on her own self-reporting. Tr. 16. The ALJ gave significant weight to the opinions of the state reviewing physicians, but only gave some weight to the opinion of Dr. Yves Lefranc, Ms. Falco's treating physician. Tr. 16–17.

At step four, the ALJ found that Ms. Falco was able to perform her past relevant work as a production assembler. Tr. 17. Alternatively, the ALJ called a vocational expert ("VE") to testify at the hearing. Tr. 46–49. The ALJ asked the VE to consider a hypothetical claimant with restrictions based on those formulated in Ms. Falco's RFC; the VE responded that a person with those restrictions would be able to perform the work of a hand packer and a telemarketer. Tr. 18.

Based on the VE's testimony, the ALJ found that Ms. Falco was capable of performing "jobs that exist in significant numbers in the national economy" through her date last insured. *Id.* The ALJ therefore concluded that Ms. Falco was not disabled. Tr. 18–19.

## II.    STANDARD OF REVIEW

The district court must affirm the Commissioner's decision if it is based on the proper legal standards and the findings are supported by substantial evidence. 42 U.S.C. § 405(g); *see also Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989). "Substantial evidence" means "more than a mere scintilla, but less than a preponderance." *Bray v. Comm'r Soc. Sec. Admin.,* 554 F.3d 1219, 1222 (9th Cir. 2009) (quoting *Andrews v. Shalala,* 53 F.3d 1035, 1039 (9th Cir. 1995)). It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.*

Where the evidence is susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982). Variable interpretations of the evidence are insignificant if the Commissioner's interpretation is a rational reading of the record, and this Court may not substitute its judgment for that of the Commissioner. *Burch v. Barnhart,* 400 F.3d 676, 679 (9th Cir. 2005). "However, a reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (quotation marks omitted)). The reviewing court, however, may not affirm the Commissioner on a ground upon which the Commissioner did not rely. *Orn,* 495 F.3d at 630; *see also Bray,* 554 F.3d at 1226–26 (citing *SEC v. Chenery Corp.,* 332 U.S. 194, 196 (1947)).

## III.    DISCUSSION

Ms. Falco argues that the ALJ erred by: (1) failing to find her anxiety severe at step two; (2) failing to adequately explain why the combined effect of her impairments did not meet or

equal listings 1.02 and 12.06 at step three; (3) improperly finding her subjective symptom

testimony not credible; (4) improperly rejecting the opinion of Dr. Lefrank, a treating physician;

(5) improperly rejecting the lay witness testimony; and (6) improperly relying on VE testimony

that contradicts the Dictionary of Occupational Titles ("DOT").

## A.    Step Two

Ms. Falco argues that the ALJ erred by concluding that her anxiety disorder was not a

severe impairment. Pl.'s Br. 3–6. At step two, the ALJ determines whether the claimant has a

medically determinable severe impairment or combination of impairments. 20 C.F.R.

§§ 404.1520, 416.920. An impairment is not severe if it does not significantly limit the

claimant's ability to do basic work activities. 20 C.F.R. §§ 404.1521, 416.921; *see also Webb v.

Barnhart*, 433 F.3d 683, 686 (9th Cir. 2005). The step two threshold is low; it is a "de minimus

screening device to dispose of groundless claims." *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th

Cir. 1996).

During the hearing, Ms. Falco reported anxiety secondary to her high levels of pain.

*E.g.*, Tr. 42. In the medical evidence, Ms. Falco's generalized anxiety is first diagnosed by

Dr.  Lefranc, a treating physician, on February 25, 2009, shortly after a radiologist suggested

surgical excision of a tissue mass in her breast. Tr. 301. Thereafter, Dr. Lefranc maintained that

diagnosis during a patient visit on March 16, 2009; however, he did not diagnose anxiety during

patient visits on March 30, 2009, and September 14, 2009. Tr. 298, 296–97, 371–73. In a letter

dated February 23, 2010, Dr. Lefranc renewed, without comment, the diagnosis of anxiety.

Tr. 390.

The ALJ rejected Ms. Falco's complaints of anxiety because it was not diagnosed or treated by a mental health professional and the state mental health consultant found that she did not have a medically determinable mental impairment. Tr. 13. Dr. Lefranc's diagnosis was noted, but the ALJ discounted it because Dr. Lefranc's treatment notes did not reflect the diagnosis and mental health was not Dr. Lefranc's area of expertise. *Id.* The ALJ went on to consider whether Mr. Falco suffered limitations in the four functional areas defined by the "paragraph B" criteria in Listing 12.06, 20 C.F.R., Pt. 404, Subpt. P, App'x 1. Tr. 13. He found mild limitations in three of the four functional areas: activities of daily living, social functioning, and concentration, persistence, and pace. Tr. 13–14.

A mild restriction in three functional areas "has more than a minimal effect on an individual ability to work." *See Smolen*, 80 F.3d at 1290. The ALJ's finding that Ms. Falco suffered mild restriction in three of four functional areas apparently due to anxiety in combination with her other impairments is likely sufficient to overcome the step two "de minimis screening device." *See id*. Thus, Ms. Falco's anxiety should have been considered a severe impairment.

In any event, the ALJ's error in designating anxiety as non-severe did not prejudice Ms. Falco because the ALJ resolved step two in her favor. *See Gray v. Comm'r Soc. Sec. Admin.*, 365 Fed. Appx. 60, 61 (9th Cir. 2010) (rejecting the argument that the ALJ erred at step two by determining certain impairments were non-severe because "the ALJ concluded that [claimant's] other medical problems were severe impairments"); *Mondragon v. Astrue*, 364 Fed. Appx. 346, 348 (9th Cir. 2010) ("Any alleged error at step two was harmless because step two was decided in [claimant]'s favor with regard to other ailments."). Moreover, the ALJ expressly

noted that conditions he considered non-severe "have been considered in considered in conjunction with the claimant's severe impairments noted above." Tr. 13. Thus, the ALJ did not commit reversible error by failing to consider Ms. Falco's anxiety severe at step two.

## B.    Step Three

Ms. Falco next argues that the ALJ erred by inadequately explaining his finding that she did not equal Listing 1.02 and by failing to address Listing 12.06. Pl.'s Br. 6–7. An irrebuttable presumption of disability arises if a claimant establishes that he or she meets or equals the requirements of a listed condition found at 20 C.F.R. Part 404, Subpart P, Appendix 1. *See* 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii); *see also Sullivan v. Zebley*, 493 U.S. 521, 532 (1990) ("[T]he listings were designed to operate as a presumption of disability that makes further inquiry unnecessary."). In evaluating equivalence, the claimant's symptoms "must be considered in combination and must not be fragmentized in evaluating their effects." *Lester v. Chater*, 81 F.3d 821, 829 (9th Cir. 1995) (citations omitted).

Listing 12.06, Anxiety Related Disorders, is defined as and requires:

In these disorders anxiety is either the predominant disturbance or it is experienced if the individual attempts to master symptoms; for example, confronting the dreaded object or situation in a phobic disorder or resisting the obsessions or compulsions in obsessive compulsive disorders.

The required level of severity for these disorders is met when the requirements in both A and B are satisfied, or when the requirements in both A and C are satisfied.

A. Medically documented findings of at least one of the following:

1. Generalized persistent anxiety accompanied by three out of four of the following signs or symptoms:

a. Motor tension; or
b. Autonomic hyperactivity; or
c. Apprehensive expectation; or

        d. Vigilance and scanning;

or

        2. A persistent irrational fear of a specific object, activity, or situation which results in a compelling desire to avoid the dreaded object, activity, or situation; or

        3. Recurrent severe panic attacks manifested by a sudden unpredictable onset of intense apprehension, fear, terror and sense of impending doom occurring on the average of at least once a week; or

        4. Recurrent obsessions or compulsions which are a source of marked distress; or

        5. Recurrent and intrusive recollections of a traumatic experience, which are a source of marked distress;

And

B. Resulting in at least two of the following:

        1. Marked restriction of activities of daily living; or
        2. Marked difficulties in maintaining social functioning; or
        3. Marked difficulties in maintaining concentration, persistence, or pace; or
        4. Repeated episodes of decompensation, each of extended duration.

OR

C. Resulting in complete inability to function independently outside the area of one's home.

20 C.F.R., Pt. 404, Subpt. P, App'x 1, § 1.02. The Court notes that Ms. Falco neither makes any argument nor does she direct the Court's attention to any evidence supporting her claim. *See* Pl.'s Br. at 6–7. Moreover, she does not challenge the ALJ's findings that she had only mild restriction in her activities of daily living, social functioning, and concentration, persistence, and pace. Tr. 13–14.

        To establish listing 12.06, a claimant must satisfy the A criteria and either the B or C criteria. Considering all of the evidence in the record, Ms. Falco does not satisfy any of the listed

OPINION AND ORDER, Page 10

criteria. *See* 20 C.F.R., Pt. 404, Subpt. P, App'x 1, § 12.06. Dr. Lefranc diagnosed Ms. Falco with generalized anxiety disorder, satisfying the first component of the A criteria. *Id.* at § 12.06. Nothing in the record, however, suggests that Ms. Falco: (1) exhibits any of the additional signs and symptoms, *id.* at § 12.06(A)(1)(a–d) (requiring three of four: motor tension; autonomic hyperactivity; apprehensive expectation; or vigilance and scanning); (2) has an irrational fear of an object, activity, or situation, *id.* at § 12.06(A)(2); (3) has panic attacks, *id.* at § 12.06(A)(3); (4) has obsessions or compulsions, *id.* at § 12.06(A)(4); or (5) has recollections of a traumatic experience, *id.* at § 12.06(A)(5). As noted above, Ms. Falco does not challenge the ALJ's finding of only mild restrictions; thus, she cannot satisfy the B criteria. *See id*. at § 12.06(B)(1–4). Finally, Ms. Falco cannot satisfy the C criteria, *id.* at § 12.05(C), as the evidence demonstrates that Ms. Falco functions independently outside of her home. *E.g.*, Tr. 154 (claimant can drive a car and go shopping in stores).

Although the ALJ must consider whether the claimant's symptom's equal a listing, a claimant on appeal must do more than draw a court's attention to an ALJ's omission. *See Lewis v. Apfel*, 236 F.3d 503, 514 (9th Cir. 2001). Instead, the claimant must "offer[ a] theory, plausible or otherwise, as to how his [or her] disorder[s] . . . combine[] to equal a listed impairment." *Id.* Here, Ms. Falco does not articulate any theory of equivalence for listing 1.02 or listing 12.06. Ms. Falco cites to *Marcia v. Sullivan*, which held that the ALJ's statement that the claimant "did not equal the listing was insufficient." *Marcia v. Sullivan*, 900 F.2d 172, 176 (9th Cir. 1990). The court in *Lewis*, however, distinguished *Marcia* because there the claimant went so far as to present evidence of equivalence, which Ms. Falco does not. *Lewis*, 236 F.3d at 514; *see also Marcia*, 900 F.2d at 175–76 ("Marcia presented evidence in an effort to establish equivalence.").

Moreover, it is readily apparent from the evidence in the record that Ms. Falco cannot equal Listing 1.02 or Listing 12.06. Given the evidence in the record, Ms. Falco would not be able to articulate a plausible theory of equivalence for listing 12.06. *See supra* pp. 10–11. Listing 1.02 requires that a claimant meet or equal the definition and either the A criteria or the B criteria. *See* 20 C.F.R. Pt. 404, Subpt. P, App'x 1, § 1.02.[1] The A criteria requires an "inability to ambulate effectively," *id.* at § 1.02(A), which is defined as "an extreme limitation of the ability to walk" and an inability to sustain "a reasonable walking pace over a sufficient distance to be able to carry out activities of daily living," *id.* at 1.00(B)(2)(b)(1–2). Ms. Falco walked two blocks to the hearing and is able to go grocery shopping daily; thus, her medical impairments cannot equal the A criteria. Tr. 43, 154. The B criteria requires an "inability to perform fine and gross movements effectively," 20 C.F.R., Pt. 404, Subpt. P, App'x 1, § 1.02(B), which is defined as "an extreme loss of function of both upper extremities." *Id.* at § 1.00(B)(2)(c). As Ms. Falco

---

[1] Listing 1.02, Major dysfunction of a joint, is defined as:

> Characterized by gross anatomical deformity (e.g., subluxation, contracture, bony or fibrous ankylosis, instability) and chronic joint pain and stiffness with signs of limitation of motion or other abnormal motion of the affected joint(s), and findings on appropriate medically acceptable imaging of joint space narrowing, bony destruction, or ankylosis of the affected joint(s). With:
>
> A. Involvement of one major peripheral weight-bearing joint (i.e., hip, knee, or ankle), resulting in inability to ambulate effectively, as defined in 1.00B2b;
>
> or
>
> B. Involvement of one major peripheral joint in each upper extremity (i.e., shoulder, elbow, or wrist-hand), resulting in inability to perform fine and gross movements effectively, as defined in 1.00B2c.

20 C.F.R. Pt. 404, Subpt. P, App'x 1, § 1.02.

has not alleged any loss of function in her upper extremities, she cannot equal the B criteria. Therefore, any error made by the ALJ in not considering whether Ms. Falco equaled listings 1.02 or 12.06 was harmless.

## C.      Ms. Falco's Credibility

Ms. Falco also argues that the ALJ did not provide clear and convincing reasons for finding her not credible; thus, he improperly discounted her subjective symptom testimony. Pl.'s Br. at 7–15. The Ninth Circuit has developed a two-step process for evaluating the credibility of a claimant's own testimony about the severity and limiting effect of the claimant's symptoms. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). First, the ALJ "must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007). When doing so, the claimant "need not show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom." *Smolen*, 80 F.3d at 1282.

Second, "if the claimant meets the first test, and there is no evidence of malingering, 'the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so.'" *Lingenfelter*, 504 F.3d at 1036 (quoting *Smolen*, 80 F.3d at 1281). It is "not sufficient for the ALJ to make only general findings; he must state which pain testimony is not credible and what evidence suggests the complaints are not credible." *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). Those reasons must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily

discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (citing *Bunnell v. Sullivan*, 947 F.2d 341, 345-46 (9th Cir. 1991) (*en banc*)).

The ALJ may consider objective medical evidence and the claimant's treatment history, as well as the claimant's daily activities, work record, and observations of physicians and third parties with personal knowledge of the claimant's functional limitations. *Smolen*, 80 F.3d at 1284. The Commissioner recommends assessing the claimant's daily activities; the location, duration, frequency, and intensity of the individual's pain or other symptoms; factors that precipitate and aggravate the symptoms; the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms; treatment, other than medication, the individual receives or has received for relief of pain or other symptoms; and any measures other than treatment the individual uses or has used to relieve pain or other symptoms. *See* SSR 96-7p, *available at* 1996 WL 374186.

Further, the Ninth Circuit has said that an ALJ also "may consider . . . ordinary techniques of credibility evaluation, such as the reputation for lying, prior inconsistent statements concerning the symptoms, . . . other testimony by the claimant that appears less than candid [and] unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment." *Smolen*, 80 F.3d at 1284. The ALJ may not, however, make a negative credibility finding "solely because" the claimant's symptom testimony "is not substantiated affirmatively by objective medical evidence." *Robbins*, 466 F.3d at 883.

Ms. Falco testified that her inability to work is a result of back and hip pain, which is secondary to a condition where her left leg is shorter than her right leg. Tr. 39–40. The incongruity in her leg lengths results in difficulty walking and balancing and numbness in her

legs. Tr. 39–41. As a result of the pain, Ms. Falco testified that she sleeps throughout the day.

Tr. 41–42. She reported that she can lift ten pounds, sit for fifteen to twenty minutes at a time,

stand up for to thirty minutes, and walk at least two blocks. Tr. 42–43, 156. Because of her

conditions, she is unable to squat, climb stairs, or kneel, and she rarely bends. Tr. 156. Ms. Falco

also testified that she has high blood pressure, which restricts her breathing and causes an

increased heart rate. Tr. 39. She also reported anxiety and depression secondary to her other

conditions. Tr. 41–42.

The ALJ, applying the first step of the credibility framework, found "that the claimant's

medically determinable impairments could reasonably be expected to cause the alleged

symptoms." Tr. 15. In applying the second step, however, the ALJ found that "the claimant's

statements concerning intensity, persistence, and limiting effects of these symptoms are not

credible to the extent they are inconsistent with the above [RFC] assessment." *Id.* In support of

his finding, the ALJ offered several specific reasons: (1) Ms. Falco's inconsistent activities of

daily living, including the receipt of unemployment benefits, her reason for leaving her last job,

and her work after the alleged onset date; (2) a failure to follow medical advice; (3) an

inconsistent reporting of symptoms; and (4) the disparity between her testimony and the

objective medical evidence. Tr. 15–16.

### 1.      Activities of Daily Living

The ALJ found that the daily activities described by Ms. Falco indicate that she is "not

limited to the extent one would expect, given her complaints." Tr. 15. Daily activities can form

the basis of an adverse credibility finding where the claimant's activities either contradict his or

her other testimony or meet the threshold for transferable work skills. *See Orn*, 495 F.3d at 639.

A claimant, however, need not be utterly incapacitated to receive disability benefits, and sporadic completion of minimal activities is insufficient to support a negative credibility finding. *Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001); *see also Reddick v. Chater*, 157 F.3d 715, 722–23 (9th Cir. 1998) (requiring the level of activity to be inconsistent with the claimant's claimed limitations to be relevant to his or her credibility).

Ms. Falco testified that she able to drive, do laundry, prepare simple meals, and is able to independently attend to her personal needs. Tr. 151–58. Further, she shops for food daily. Tr. 154. These activities, however, are not inconsistent with Ms. Falco's allegations of disability. *See Vertigan*, 260 F.3d at 1050. Indeed, they appear to be minor parts of Ms. Falco's day and say little about her ability to ambulate or the extent of her pain. Therefore, the ALJ's reliance on Ms. Falco's activities of daily living was not a clear and convincing reason to find her not credible.

The ALJ also relied on Ms. Falco's testimony that she was receiving unemployment benefits and had been for almost eighteen months. Tr. 15, 37. In Oregon, to be eligible for unemployment benefits the claimant must, among other things, be "able to work . . . available for work, and . . . actively seeking and unable to obtain suitable work." Or. Rev. Stat. § 657.155(c). The Ninth Circuit has recognized, however, that an ALJ's reliance on a claimant's receipt of unemployment benefits is improper unless the record establishes whether the claimant held himself or herself out as being available for full-time work. *See Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1162 (9th Cir. 2008). The record does not reveal whether Ms. Falco held herself out as capable of full-time employment; thus, the ALJ's reliance on her receipt of unemployment benefits was error.

Finally, the ALJ cited evidence in the record that Ms. Falco had been doing some work since her alleged onset date. Tr. 15. On March 5, 2009, chart notes from Dr. Yu, a treating physician, indicate that Ms. Falco worked for a subcontractor on an assembly line. Tr. 266. This observation is repeated twice through April 27, 2009. Tr. 352, 354, 375–76. Ms. Falco argues that the repetition of verbatim language is evidence that Dr. Yu simply inserted Ms. Falco's March 5 social history into chart notes for her later visits. Pl.'s Br. at 10. On September 14, 2009, however, Ms. Falco reported to Dr. Lefranc that "she takes one [Vicodin] at night on the day that she works." Tr. 371. Considering all of this evidence together, the ALJ's interpretation—that Ms. Falco was doing some work—is not unreasonable; thus, the Court may not upset it. *See Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001) ("But it is still a reasonable interpretation and is supported by substantial evidence; thus, it is not our role to second-guess it.") (citing *Fair v. Bowen*, 885 F.2d 597, 604 (9th Cir. 1989)).

In summary, except where indicated, the ALJ's reliance on Ms. Falco's activities of daily living was error.

### 2.    Failure to Follow Treatment Advice

The ALJ also found Ms. Falco's complaints not credible because she failed to follow her physicians' treatment advice. Tr. 15–16. An ALJ may consider a claimant's failure to follow a prescribed course of treatment when weighing a claimant's credibility. *See Tommasetti v. Astrue*, 533 F.3d 1035, 1039–40 (9th Cir. 2008) (quoting *Smolen*, 80 F.3d at 1284) (The ALJ may consider "unexplained or inadequately explained failure . . . to follow a prescribed course of treatment.") (internal quotations omitted); *Johnson v. Shalala*, 60 F.3d 1428, 1434 (9th Cir. 1995).

Ms. Falco's hip and back pain, which appears to be the source of her exertional and ambulatory restrictions, is secondary to a discrepancy in the length of her legs. Tr. 297. To remedy the leg length discrepancy, Ms. Falco has been advised on at least two occasions, the most recent being March 30, 2009, to wear a shoe insert "to make up for the difference in the length of her legs." Tr. 296–97. Ms. Falco, however, has made no effort to wear the insert. Tr. 41 (Ms. Falco testified at the December 10, 2010 hearing, "I have to get a special shoe . . . so I can get level."), Tr. 296–97  (Dr. Lefranc "advised [patient] to wear insert this time"). Although Ms. Falco argues that she had limited financial resources, the evidence establishes that her insurance lapsed after Dr. Franco and a previous physician prescribed the insert. *See* Tr. 296–98, 371.

Given the severity of the symptoms described by Ms. Falco and the relative inexpensiveness and simplicity of the insert, Ms. Falco's decision not to follow her doctors' recommendations is surprising and constitutes substantial evidence that she was not as disabled as alleged. *See Burch*, 400 F.3d at 681 ("That [the claimant's] pain was 'not severe enough to motivate [her] to seek [these forms of] treatment,' . . . even if she sought some treatment, is powerful evidence regarding the extent to which she was in pain.") (quoting *Fair*, 885 F.2d at 604). Therefore, the ALJ was permitted to infer from Ms. Falco's choice not to use a shoe insert that her pain and limitations were not as severe as she alleges. *See Tommasetti*, 533 F.3d at 1039–40.

Similarly, although Ms. Falco's decision to not use an assistive device is not a clear and convincing reason alone, it offers some support for the ALJ's conclusion that Ms. Falco's testimony that she had trouble balancing was not credible. Tr. 15. Moreover, that a medical

source never recommended the use of an assistive device is irrelevant because the record does

not reveal a single instance of Ms. Falco complaining about balance issues to a physician. *See,*

*e.g.*, Tr. 373 (Ms. Falco displayed no loss of strength in her musculoskeletal system, normal

posture, and an appropriate level of activity).

Therefore, the ALJ offered clear and convincing reasons supported by substantial

evidence in finding that Ms. Falco's subjective symptom testimony was not credible.

### 3.    Intermittent Reporting of Symptoms

The ALJ also found Ms. Falco's complaints not credible because she only intermittently

reported symptoms. Tr. 15–16. A claimant's inconsistent or non-existent reporting of symptoms

is competent evidence for an ALJ to consider when making a credibility assessment. *See Greger*

*v. Barnhart*, 464 F.3d 968, 972 (9th Cir. 2006).

The ALJ discounted Ms. Falco's testimony about her hypertension because she did not

complain of related symptoms during her most recent visits with her primary care physician,

Dr. Lefranc. Tr. 296–97, 371–73. Although it is may be of some relevance that Ms. Falco failed

report the symptoms of her hypertension during these visits, it also appears that the primary

purpose of these visits was to discuss her hip and joint pain, which reduces the relevance of

Ms. Falco's failure to report symptoms of hypertension. *See id.* Therefore, the ALJ's reason is

not supported by substantial evidence and is not sustained; however, any attendant error is

harmless.

An RFC must include all limitations that are supported by substantial evidence in the

record. *See Osenbrock v. Apfel*, 240 F.3d 1157, 1165 (9th Cir. 2001). Ms. Falco, however, does

not make any argument that the limitations she suffers from her hypertension—occasional

shortness of breath and an elevated heart rate—are not adequately accounted for by an RFC that limits her to less than a full range of light work, nor is this apparent to the Court. *See McLeod v. Astrue*, 640 F.3d 881, 887 (9th Cir. 2011) (as amended) ("Where harmfulness of the error is not apparent from the circumstances, the party seeking reversal must explain how the error caused harm."). Therefore, any error made by the ALJ in finding Ms. Falco's subjective testimony not credible was harmless because it was properly accounted for in the RFC.

### 4.    Objective Medical Evidence

The ALJ found that there was a lack of objective medical evidence substantiating Ms. Falco's complaints of pain and her allegations of mental disorders. Tr. 15–16. A lack of objective medical evidence, standing alone, may not serve as a clear and convincing reason to discredit the claimant's credibility when the ALJ has already determined that the claimant's impairments could produce some of the symptoms alleged. *See Rollins*, 261 F.3d at 857 ("[T]he medical evidence is still a relevant factor in determining the severity of the claimant's [symptoms].") (citation omitted); *Reddick*, 157 F.3d at 722. Here, however, the ALJ has already offered two legally sufficient reasons for discounting Ms. Falco's testimony. Therefore, the ALJ's reliance on the objective medical evidence was not error.

In sum, the ALJ offered clear and convincing reasons supported by substantial evidence for finding Ms. Falco not credible; therefore, the ALJ's erroneous reasons are harmless, and the Court need not address Ms. Falco's remaining assignments of error on this issue. *See Carmickle*, 533 F.3d at 1163 (affirming the ALJ's overall credibility finding despite errors); *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1197 (9th Cir. 2004) (same). Thus, the ALJ's credibility finding is affirmed.

**D.    Dr. Lefranc's Opinion**

Ms. Falco argues that the ALJ failed to provide "legitimate" reasons for rejecting the opinion of Dr. Lefranc, a treating physician, as to Ms. Falco's fibromyalgia, anxiety, and depression.  In doing so, Ms. Falco concludes, the ALJ violated his duty to develop the record. Pl.'s Br. 15–17.

An ALJ must determine the weight to give each source of evidence. 20 C.F.R. §§ 404.1527(d), (f), 416.927(d), (f). Opinions from "acceptable medical sources" may generally be accorded more weight than those from "other sources." *Gomez v. Chater*, 74 F.3d 967, 970 (9th Cir. 1996); 20 C.F.R. §§ 404.1513, 416.913. An ALJ may wholly or partially discount the opinion of any source, but the regulations and Ninth Circuit case law establish specific standards that an ALJ must apply in order to do so. *See* 20 C.F.R. §§ 404.1527, 416.927 (standards for evaluating medical opinions); *Lester*, 81 F.3d at 830–33 (standards for evaluating acceptable medical sources); *Dodrill*, 12 F.3d at 918–19 (standards for evaluating other sources). An ALJ may only reject the opinion of a doctor who has examined a claimant in favor of the differing opinion of a non-examining doctor if the ALJ "gives specific, legitimate reasons for doing so, and those reasons are supported by substantial record evidence." *Roberts v. Shalala*, 66 F.3d 179, 184 (9th Cir. 1995).

The ALJ has a duty to "fully and fairly develop the record and to assure that the claimant's interests are considered." *Smolen*, 80 F.3d at 1288 (quoting *Brown v. Heckler*, 713 F.2d 441, 443 (9th Cir. 1983)). If the claimant is unrepresented, represented by a lay person, or suffering from a mental illness rendering him or her unable to protect his or her own interests, then "the ALJ must be especially diligent in exploring for all of the relevant facts." *Tonapetyan*

*v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001) (citation omitted). "Ambiguous evidence, or the ALJ's own finding that the record is inadequate to allow for proper evaluation of the evidence, triggers the ALJ's duty to "'conduct an appropriate inquiry.'" *Id.* (quoting *Smolen*, 80 F.3d at 1288).

Dr. Lefranc intermittently treated Ms. Falco for a variety of conditions from August 2008 through September 2009. Tr. 305, 371. Dr. Lefranc's treatment notes mention the following relevant diagnoses on at least one occasion: joint pain, cardiac murmurs, neck pain, hypertension, generalized anxiety disorder, and hip dysplasia. Tr. 297, 299, 302, 305–06, 372–73. On February 3, 2010, Dr. Lefranc wrote an opinion letter that stated, "Ms. Falco suffers from Chronic back pain secondary to one leg being short[er] that [sic] the other, also Fibromyalgia, Anxiety and Depression." Tr. 390. Regarding Ms. Falco's functioning, however, Dr. Lefranc only stated that "[t]he combination of all these problems have affected her ability to work and keep a job." *Id.* The ALJ only gave Dr. Lefranc's opinion "some weight" because the letter was "quite conclusory" and offered diagnoses beyond his specialty. Tr. 17.

Ms. Falco argues that the ALJ had a duty to re-contact Dr. Lefranc because of the inconsistent evidence supporting his diagnosis of her fibromyalgia. Pl.'s Br. at 16. The ALJ noted that Dr. Lefranc's treatment notes, as distinct from his opinion letter, are devoid of references to fibromyalgia, making his diagnosis in the opinion letter suspect. Tr. 17. Although Ms. Falco was unrepresented at the hearing, which heightened the ALJ's duty to develop the record, the ALJ did not err by failing to re-contact Dr. Lefranc. At step two, the ALJ concluded that Ms. Falco's fibromyalgia was a severe impairment; however, the only evidence indicating that Ms. Falco suffers functional limitations resulting from her fibromyalgia is her own

OPINION AND ORDER, Page 22

testimony. Tr. 12, 38. Dr. Lefranc's treatment notes, which Ms. Falco does not allege are incomplete, only once mention a potential rheumatic genesis for her pain.[2] Tr. 305; s*ee generally* Tr. 283–304, 371–73. At Ms. Falco's first meeting with Dr. Lefranc on August 1, 2008, he noted that her prior physician did "not work up for rheumatic problems" with regard to her hip pain. Tr. 305. This note, however, is never repeated despite Ms. Falco's repeated complaints of hip and back pain; indeed, a rheumatic cause of Ms. Falco's pain appears to be abandoned in favor of a conclusion of degenerative joint disease. *See, e.g.*, 371–72 (diagnosing Ms. Falco with "acetabular dysplasia" based on an MRI). Therefore, Dr. Lefranc's reference to fibromyalgia in a form opinion letter did not trigger the ALJ's duty to supplement the record because it is not ambiguous; instead, Dr. Lefranc's statement in his letter concerning Ms. Falco's diagnosis of fibromyalgia was unsupported by his treatment notes. *See Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005) ("[A]n ALJ need not accept the opinion of a doctor if that opinion is brief, conclusory, and inadequately supported by clinical findings.").

The ALJ also rejected Dr. Lefranc's opinion that Ms. Falco suffered from anxiety and depression because his opinion was conclusory, the diagnoses were unsupported by his clinical observations, and mental health treatment is outside of his expertise. Tr. 13, 17. Here, Ms. Falco's objection is correct; the ALJ erred by discounting Dr. Lefranc's diagnoses for being outside of his practice. *See Sprague v. Bowen*, 812 F.2d 1226, 1232 (9th Cir. 1987) ("[I]t is well established that primary care physicians (those in family or general practice) 'identify and treat the majority of Americans' psychiatric disorders.'") (quoting C. Tracy Orleans, Ph.D., Linda K.

---

[2] Fibromyalgia is "a rheumatic disease that causes inflammation of the fibrous connective tissue components of muscles, tendons, ligaments, and other tissue." *Benecke v. Barnhart*, 379 F.3d 587, 589 (9th Cir. 2004) (citations omitted).

George, Ph.D., Jeffrey L. Houpt, M.D., & H. Keith H. Brodie, M.D., *How Primary Care Physicians Treat Psychiatric Disorders: A National Survey of Family Practitioners*, 142:1 Am. J. Psychiatry 52 (1985)). The ALJ's other conclusions, however, are specific and legitimate reasons to give Dr. Lefranc's opinion less weight.[3] Regarding depression, Dr. Lefranc does not mention that diagnosis once in his treatment notes; therefore, the ALJ correctly discounted his opinion with respect to that diagnosis. *See Bayliss*, 427 F.3d at 1216 (9th Cir. 2005) ("[A]n ALJ need not accept the opinion of a doctor if that opinion is brief, conclusory, and inadequately supported by clinical findings.").

Even assuming, however, that the ALJ's rejection of Dr. Lefranc's diagnosis of anxiety was error, Ms. Falco makes no argument as to how she suffered prejudice. *See McLeod*, 640 F.3d at 887 ("Where harmfulness of the error is not apparent from the circumstances, the party seeking reversal must explain how the error caused harm."). Dr. Lefranc's conclusion was that Ms. Falco's medical conditions "have affected her ability to work and keep a job." Tr. 390. A review of the record, however, does not reveal any work-related limitations secondary to anxiety. *E.g.*, Tr. 39 (elevated heart beat and difficulty breathing are secondary to high blood pressure). Indeed, during the hearing, Ms. Falco's references to depression and anxiety were not connected to any concrete limitations. *E.g.*, Tr. 41 ("[Y]ou know, that's another problem why I'm having

---

[3] Although there is a question whether Dr. Lefranc's opinion is contradicted by a consultative source, Tr. 362, 386, Ms. Falco concedes that the ALJ need only provide legitimate reasons for his conclusion. *See* Pl.'s Br. at 17 ("The ALJ offered no *legitimate* reason for rejecting the opinion of Dr. Lefranc.") (emphasis added).

trouble just working, and my depression and anxiety along with [my leg length imbalance].");
Tr. 42 ("[J]ust everything is crumbling down on me, and my anxiety is just really high.").[4]

  The Court, however, is mindful that Ms. Falco was unrepresented at the hearing and therefore may not have had a full opportunity to present the extent of her mental impairments. *Cf. Tonapetyan*, 242 F.3d at 1150 ("When the claimant is unrepresented, however, the ALJ must be especially diligent in exploring for all the relevant facts.") (citation omitted). In contrast to the ALJ's rejection of Dr. Lefranc's diagnosis of fibromyalgia, the diagnosis of anxiety is somewhat supported by his treatment notes, resulting in an ambiguity in the record. *See Tonapetyan*, 242 F.3d at 1150 ("Ambiguous evidence . . . triggers the ALJ's duty to conduct an appropriate inquiry.") (quotation and citation omitted). Further, it is not clear from the record whether the individuals reviewing Ms. Falco's complaints of mental limitations are acceptable medical professionals, which would help determine the weight that their opinions should be given. Tr. 362, 386.

  On remand, the ALJ shall reconsider the medical evidence of Ms. Falco's anxiety and take appropriate measures to supplement the record. The ALJ's findings with respect to Dr. LeFranc's other opinions are affirmed.

---

[4] It appears that a lump detected in Ms. Falco's breast tissue on February 10, 2009, and the attendant medical procedures, may have been a situational cause of her anxiety. Tr. 303. On February 25, 2009, Dr. Lefranc diagnosed Ms. Falco with generalized anxiety disorder, but that was shortly after she experienced a biopsy that was "technically difficult;" in making this diagnosis, Dr. Lefranc noted that he "discussed [her] biopsy and anxiety." Tr. 301–02. On March 16, 2009, Dr. Lefranc again diagnosed Ms. Falco with generalized anxiety disorder, yet commented that Ms. Falco's breast lump excision surgery was scheduled to be performed two days later and that she was "very anxious about it." Tr. 297–98. Subsequently, Dr. Lefranc neither diagnosed nor mentioned anxiety again until his letter of February 3, 2010. Tr. 390.

**E.     Lay Witness Testimony**

Ms. Falco argues that the ALJ erroneously rejected the testimony of a lay witness, Mr. McKinley, without providing a germane reason for doing so. Pl.'s Br. at 17–20. "Lay testimony as to a claimant's symptoms is competent evidence that an ALJ must take into account, unless he or she expressly determines to disregard such testimony and gives reasons germane to each witness for doing so." *Lewis*, 236 F.3d at 511.

Mr. McKinley is Ms. Falco's current roommate and has known her for eight years. Tr. 44. Although he reported that Ms. Falco's pain causes her to have difficulty sleeping, she is able to attend to her own personal care, prepare simple meals, drive, do laundry, and go shopping. Tr. 142–48. Based on his observations, Mr. McKinley believes that Ms. Falco is limited in her ability to lift, squat, bend, stand, walk, sit, kneel, and climb stairs, although he does not detail how her execution of each function is affected. Tr. 147.

The ALJ generally accepted Mr. McKinley's testimony; however, the ALJ found that where Mr. McKinley was simply repeating Ms. Falco's own statements, her lack of credibility rendered his testimony less credible. Tr. 16.

Here, the ALJ's rejected only a portion of Mr. McKinley's testimony where it was based on Ms. Falco's self-reporting. This is in contrast to the ALJ in *Dodrill*, who erroneously "dismissed *all* the lay witness testimony solely because he found the claimant was not credible." *Dodrill*, 12 F.3d at 919. Because the ALJ did not err in finding Ms. Falco not credible, he has offered a germane reason for discounting some of Mr. McKinley's testimony. *Cf. Bray*, 554 F.3d at 1228 (affirming the rejection of a treating physician's opinion because it was based on the

claimant's "subjective characterization of her symptoms," which the ALJ found not credible).

Thus, the ALJ's consideration of Mr. McKinley's testimony is affirmed.

**F.      VE Testimony**

Ms. Falco next argues that the ALJ improperly relied on VE testimony that contains an

unexplained divergence from the Dictionary of Occupational Titles ("DOT"). Pl.'s Br. at 20. At

step five of the sequential process, the Commissioner has the burden to show that the claimant

can perform other work existing in significant numbers in the national economy. 20 C.F.R.

§§ 404.1520(e), (f), 416.920(e), (f); *see also Yuckert*, 482 U.S. at 141–42. In meeting this

burden, the ALJ may define the claimant's capacity for physical exertion. *See* 20 C.F.R.

§§ 404.1567, 416.967. If the ALJ, however, determines that the claimant's capacity for physical

exertion falls between two defined categories, then it is appropriate for the ALJ to consult a VE.

*See Moore*, 216 F.3d at 870-71 (citing SSR 83-12, *available at* 1983 WL 31253).

If the ALJ relies on testimony from a VE, then the ALJ has an affirmative duty to ask the

VE whether or not his or her testimony conflicts with the occupational definitions found in the

DOT. *See* SSR 00-4P, *available at* 2000 WL 1898704 ("At the hearings level, as part of the

adjudicator's duty to fully develop the record, the adjudicator *will* inquire, on the record, as to

whether or not there is such consistency.") (emphasis added). If the ALJ "did not ask the expert

whether [his or] her testimony conflicted with the [DOT]," then a court "cannot determine

whether the ALJ properly relied on [the VE's] testimony." *Massachi v. Astrue*, 486 F.3d 1149,

1153–54 (9th Cir. 2007).

At the hearing, the ALJ did not inquire whether or not the VE's testimony was in conflict with the occupational definitions found in the DOT. Tr. 46–48.[5] Further, the ALJ's assertion in his decision that "the [VE's] testimony is consistent with the information contained in the [DOT]" is insufficient to comply with SSR 00-4p because there is no evidence describing how the ALJ reached that conclusion and whether he consulted with the VE. *See Massachi*, 486 F.3d at 1153-54 ("[T]he ALJ did not *ask* the VE . . .") (emphasis added). Therefore, the Court cannot be assured that the ALJ's findings at step four and step five are based on substantial evidence; they are therefore reversed.[6] *See id* at 1153–54.

### G.    Remand

The Court may, in its discretion, order an immediate payment of benefits. In "Social Security Act cases Congress has granted district courts the additional power to reverse or modify an administrative decision without remanding the case for further proceedings." *Harman v. Apfel*, 211 F.3d 1172, 1177–78 (9th Cir. 2000). The Ninth Circuit has set forth a three-part test for determining whether to remand a case for further proceedings or for immediate entry of an award of benefits. The immediate payment of benefits is appropriate where: (1) the ALJ failed to provide legally sufficient reasons for rejecting the claimant's testimony; (2) no outstanding issues remain for the ALJ to resolve; and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such testimony credited. *See Moisa v. Barnhart*, 367 F.3d 882, 887 (9th Cir. 2004).

As discussed above, the ALJ improperly discounted Dr. Lefranc's diagnosis of anxiety and failed to follow the Commissioner's own requirements in SSR 00-4P, *available at* 2000 WL

---

[5] The ALJ relied on the testimony of the VE at both steps four and five. *See* Tr. 17–18.

1898704. Because the record needs further development, however, the Court concludes that there are outstanding issues that must be resolved before a determination of disability can be made.

## IV.    CONCLUSION

For the reasons stated above, the Commissioner's decision that Ms. Falco is not disabled is REVERSED and this case is REMANDED for further proceedings consistent with this opinion.  Specifically, the ALJ shall reconsider the medical evidence of Ms. Falco's anxiety and take appropriate measures to supplement the record. Further, the ALJ shall apply SSR 00-4p's requirements and shall:  (1) inquire whether the jobs identified by the VE are consistent with the definitions in the DOT and Ms. Falco's limitations; and (2) whether there is a reasonable explanation for any inconsistencies between the VE's testimony and the DOT.

DATED this 2nd day of January, 2013.

/s/ Michael H. Simon
Michael H. Simon
United States District Judge